**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

JEROMY FRY,                                    Case No. 1:11-cv-657

          Plaintiff,                           Dlott, C.J.
                                               Bowman, M.J.

     v.

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

          Defendant.

**REPORT AND RECOMMENDATION**

     Plaintiff Jeromy Fry filed this Social Security appeal in order to challenge the

Defendant's finding that he is not disabled.  *See* 42 U.S.C. §405(g).  Proceeding through

counsel, Plaintiff presents three claims of error for this Court's review.  For the reasons

explained below, I conclude that this case should be REMANDED because the finding of

non-disability is not supported by substantial evidence in the administrative record.

     **I.  Summary of Administrative Record**

     In March 2009, Plaintiff filed an application for Supplemental Security Income

(SSI) alleging a disability onset date of September 1, 2000 due to mental impairments.

After Plaintiff's claims were denied initially and upon reconsideration, he requested a

hearing *de novo* before an Administrative Law Judge ("ALJ").  On February 23, 2011, an

evidentiary hearing was held, at which Plaintiff was represented by counsel.  (Tr. 23-65).

At the hearing, the ALJ heard testimony from Plaintiff and George Parsons, an impartial

vocational expert. On March 16, 2011, ALJ Paul Yerian denied Plaintiff's application in a written decision. (Tr. 5-22).

The record on which the ALJ's decision was based reflects that Plaintiff was 20 years old on the date his application, and had a limited education. (Tr. 17). He had no past relevant work. (Tr. 17).

Based upon the record and testimony presented at the hearing, the ALJ found that Plaintiff had the following severe impairments: "social phobia; general anxiety disorder; borderline intellectual functioning; and a dysthymic disorder." (Tr. 10). The ALJ concluded that none of Plaintiff's impairments alone or in combination met or medically equaled a listed impairment in 20 C.F.R. Part 404, Subp. P, Appendix 1. Despite these impairments, the ALJ determined that Plaintiff retains the RFC to perform a full range of work at all extertional levels, with the following nonexertional limitations:

> He can perform simple, repetitive tasks in a routine and predictable environment. He can maintain attention and concentration for two-hour segments. He can have no more than superficial contact with others.

(Tr. 13). Based upon the record as a whole including testimony from the vocational expert, and given Plaintiff's age, education, work experience, and RFC, the ALJ concluded that Plaintiff can perform jobs that exist in significant numbers in the national economy. (Tr. 17). Accordingly, the ALJ determined that Plaintiff is not under disability, as defined in the Social Security Regulations, and is not entitled to SSI. (Tr. 17-18).

The Appeals Council denied Plaintiff's request for review. Therefore, the ALJ's decision stands as the Defendant's final determination. On appeal to this Court, Plaintiff maintains that the ALJ erred by: 1) finding that Plaintiff's psychiatrist was not a "treating

source;" 2) failing to find that Plaintiff's impairments met or equaled Listing 12.06; and 3) formulating an RFC that is against the weight of the evidence.  Upon careful review and for the reasons that follow, the undersigned finds Plaintiff's assignments of error to be well-taken.

## II. Analysis

### A. Judicial Standard of Review

To be eligible for benefits, a claimant must be under a "disability" within the definition of the Social Security Act.  *See* 42 U.S.C. §1382c(a).  Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies.  *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted).  In conducting this review, the court should consider the record as a whole.  *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978).  If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if

substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. . .. The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for supplemental security income or disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

**B. Evidence of Record and ALJ Decision**

*1. Relevant Record Evidence*

The record indicates that Plaintiff struggled in school while placed in special education classes and ultimately dropped out of school in the ninth grade. A school evaluation in 1998 determined that Plaintiff's intellectual ability fell within the range of eligibility for the developmentally handicapped program. (Tr. 171). An additional school assessment performed in May 2001 indicated that Plaintiff continued to suffer from a developmental handicap/mental retardation. (Tr. 157). A periodic review of Plaintiff's Individualized Education Program ("IEP") in February 2005 states that Plaintiff's high absence rate is causing him to fail the ninth grade for the second time. (Tr. 281). The IEP further reflected poor grades (three D's and an F) and below proficient scores in all areas of the 7th Grade Ohio proficiency test. (Tr. 315). Plaintiff dropped out of school completely later that year.

Thereafter, Plaintiff began treating at Butler Behavior Health in May 2009. (Tr. 332-35). His intake mental status examination indicated depressed/anxious mood and unspecified impairments in memory and attention/concentration (Tr. 333). He was diagnosed with dysthymic disorder; social phobia; and generalized anxiety disorder. Plaintiff was assigned a Global Assessment of Functioning (GAF) score of 45.[1] (Tr. 334). He also was prescribed mirazapine. (Tr. 335).

---

[1] A GAF score represents "the clinician's judgment of the individual's overall level of functioning." American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed., text rev. 2000). The GAF score is taken from the GAF scale, which "is to be rated with respect only to psychological, social, and occupational functioning." Id. The GAF scale ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, persistent inability to maintain minimal personal

Later that month, Plaintiff was examined by Dr. Meyer, a state agency psychologist. Dr. Meyer found that Plaintiff had mild limitations in his activities of daily living and moderate limitations in social functioning and in his ability to maintain concentration, persistence or pace. (Tr. 340, 350). He found that Plaintiff had borderline intellectual functioning and was not mentally retarded. (Tr. 341, 344). Dr. Meyer concluded that Plaintiff could carry out simple and some detailed tasks and decisions; adapt in a setting with routine and predictable duties; and interact superficially with others. (Tr. 338-39). Dr. Meyer also found Plaintiff to be credible and accepted Plaintiff's allegations relating to his mental impairments.

In October 2009, state agency psychologist Dr. Haskins affirmed Dr. Meyer's opinions on Plaintiff's functional abilities, but found that the objective medical records did not support Plaintiff's allegations. (Tr. 354).

In July 2010, Plaintiff began treating at Lifespan. Treatment notes from the initial counseling session at Lifespan indicate that Plaintiff was notably anxious and cooperative. (Tr. 363). In August 2010, Plaintiff was examined by Dr. Cresci, a psychiatrist at Lifespan. Dr. Cresci diagnosed Plaintiff with social phobia, Schizoid Personality Disorder and mild mental retardation and assigned Plaintiff a GAF score of 40.[2] (Tr. 361). Dr. Cresci also prescribed Zoloft. (Tr. 363). Plaintiff was seen by Dr.

---

hygiene, or serious suicidal act with clear expectation of death). *Id.* at 34. The DSM-IV categorizes individuals with a score of 45 as having "severe symptoms ... or serious impairment in social, occupational, or school functioning." Id.

[2] A GAF score of 40 indicates some impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) OR major impairment in several areas, such as work or school, family

Cresci again on September 28, 2010. Dr. Cresci's notes indicate that Plaintiff's "anxiety even on Zoloft continues to be a problem – with some improvement – social situations, crowds are a problem. . . ." (Tr. 383). Dr. Cresci increased Plaintiff's dosage of Zoloft and also prescribed Buspar. (Tr. 384). In November 2010, Dr. Cresci's treatment notes indicate that Plaintiff's "medication is helpful – for anxiety and for relationships; reports having a difficult time concentrating, focusing and paying attention during conversations hears only about ½ that is said." (Tr. 381). Dr. Cresci continued Plaintiff on Zoloft and Buspar and also added Concerta to his medication regimen. (Tr. 381-82).

In December, Dr. Cresci submitted a letter to Plaintiff's counsel indicating that Plaintiff's mental impairments met Listing 12.06, as Plaintiff had marked restrictions in his activities of daily living; social functioning; and in maintaining concentration, persistence or pace. (Tr. 369).

Plaintiff reported to counseling sessions at Life Span in January and February 2011. (Tr. 372, 374). On February 22, 2011, a social worker/counselor at Life Span completed a Medical Assessment of Ability to Do Work Related Activities (mental) questionnaire, wherein his counselor opined, *inter alia*, that Plaintiff had good ability to follow work rules and use judgment; fair ability to function independently and maintain attention/concentration; and poor ability to deal with the public and understand, remember and carry out complex job instructions. (Tr. 399). The questionnaire also

---

relations, judgment, thinking, or mood (e.g., depressed adult avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school).

indicates that Plaintiff has poor ability to relate predictably in social situations. (Tr. 400). In support of this assessment, the counsel stated as follows:

> Does not describe average social life of 21 year old; restricted social activities. . . Client reports limited social contact for an average 21 year old such as spending time with friends and shopping.
>
> ***
>
> Client would have trouble handling bosses and co-workers who would be loud verbally and would insult client as evidenced by clients self-reports.

(Tr. 400-01).

Additionally, at the administrative hearing, Plaintiff testified that he was picked on in school by kids calling him "fat" and "retarded" and was involved in several fights due to such name-calling. (Tr. 34). He further testified that he started having difficulty being around people in fifth grade and that his anxiety continued to escalate until he eventually dropped out of school. Plaintiff currently lives with his grandmother and does not have a driver's license. (Tr. 30). He testified that he only leaves the house to go to the store or the doctor and he is always accompanied by a family member when he leaves the house due to his anxiety. (Tr. 37-39).

### 2. The ALJ's decision

As noted above, at step-two of the sequential evaluation the ALJ found Plaintiff's social phobia; general anxiety disorder; borderline intellectual functioning, and dysthymic disorder to be severe impairments. (Tr. 17). At step-three, the ALJ found that Plaintiff's impairments did not meet or equal any of the Listings for mental disorders. With respect to the paragraph "B" criteria, the ALJ determined that Plaintiff was only mildly restricted

in activities of daily living and moderately restricted in the areas of social functioning and in maintaining concentration, persistence or pace. (Tr. 11). In making this determination, the ALJ relied on the findings of the state agency medical consultants.

The ALJ noted that the February 2011 assessment from Lifespan "indicated possible greater limitations" but it could not be given controlling weight because the assessment omitted conclusions on several key factors and "appears to be in large part based upon the claimant's own self-report." (Tr. 12). The ALJ also rejected Dr. Cresci's assessment wherein he opined that Plaintiff's impairments met the requirements for Listing 12.06. In so doing, the ALJ noted that Dr. Cresci's opinion was conclusory and failed to provide adequate explanation of the evidence relied on in reaching his findings.

The ALJ determined that Plaintiff was capable of work at all exertional levels with certain mild to moderate restrictions in light of his mental impairments. (Tr. 20). With respect to the opinion evidence, the ALJ gave great weight to the analysis of the state agency psychologists "as it is consistent with and supported by the record as a whole." (Tr. 16). The ALJ further concluded that Dr. Cresci, Plaintiff's psychiatrist at Lifespan, was not a treating source as defined by the social security regulations.

### C. Specific Errors

1. *Dr. Cresci*

Plaintiff's first assignment of error asserts that the ALJ erred in finding that Dr. Cresi was a "non-treating source." The undersigned agrees.

To qualify as a treating source, the physician must have an "ongoing treatment relationship" with the claimant. 20 C.F.R. § 404.1502. Whether the source of a medical

opinion is a "treating source" requires a fact-specific inquiry. *DeBoard v. Comm'r of Soc. Sec.*, 211 F. App'x 411, 416 (6th Cir. 2006). There is no set number of times a patient must be seen by a single physician or facility for that doctor or facility to be considered a "treating source." *Id.; Kornecky v. Comm'r of Soc. Sec.*, No. 04–2171, 167 Fed. Appx. 496, 506 (6th Cir. Feb.9, 2006) ("[T]he relevant inquiry is ... whether [claimant] had the ongoing relationship with [the physician] at the time he rendered his opinion. [V]isits to [the physician] after his RFC assessment could not retroactively render him a treating physician at the time of the assessment.").

Here, the record shows that Plaintiff had an on-going treating relationship with Dr. Cresci. As detailed by Plaintiff, he first began treating at Butler Behavioral Health on May 18, 2009 and was referred to Lifespan. Lifespan is a group practice with mental health counselors and a psychiatrist, Dr. Cresci. The record indicates that Plaintiff was seen for an initial evaluation by Lifespan on July 1, 2010 and was recommended for counseling and psychiatric care. (Tr. 387-397). An individualized service plan was completed on July 8, 2010. (Tr. 365, 366). He was seen at Lifespan for counseling on July 8, 2010, July 22, 2010, and August 5, 2010. (Tr. 357, 363-364) On August 24, 2010, Plaintiff was seen by Dr. Cresci for a psychiatric evaluation and was diagnosed with social phobia, schizoid personality disorder and mild mental retardation with a GAF of 40. He was also started on Zoloft. (Tr. 358-362). On September 3, 2010 he was seen in counseling again. (Tr. 356). On September 28, 2010 Dr. Cresci again saw Plaintiff and starting him on Zoloft and Buspar. (Tr. 383, 384). On October 21, 2010 he was seen in counseling again. (Tr. 378). On November 9, 2010 he was again seen by Dr.

Cresci who continued him on Zoloft and Buspar and added Concerta. (Tr. 381, 382). He continued treatment with his therapist at Lifespan on November 11, 2010, December 9, 2010, January 6, 2011, and February 8, 2011. (372-377).

Thus, Plaintiff's treatment at Lifespan included psychotherapy with a counselor coupled with psychiatric care and medication monitoring by Dr. Cresci. The Sixth Circuit has noted such a "situation is not unique; many unemployed disability applicants receive treatment at clinics that render care to low income patients by providing mental health treatment through such counselors." *Cole v. Astrue*, 661 F.3d 931, 939, n. 4 (6th Cir. 2011).

Furthermore, as a treating source, Dr. Cresci's opinion is entitled to controlling weight, if 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and is 'not inconsistent with the other substantial evidence in [the] case record.'" *Blakley v. Commissioner Of Social Sec.,* 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Wilson* v. *Commissioner,* 378 F.3d 541, 544 (6th Cir. 2004). If the ALJ does not accord controlling weight to a treating physician, the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician*. Wilson*, 378 F.3d at 544; *see also* 20 C.F.R. § 404.1527(d)(2). Here, because the ALJ improperly concluded that Dr. Crecsi was a non-treating source, Dr. Cresi's opinions were not evaluated pursuant to the treating physician rule. This error, plus the additional errors committed

11

by the ALJ, more fully explained below, requires that this matter be remanded for further fact-finding.

## 2. *Listing 12.06*

Plaintiff further argues that the ALJ erred in failing to find that Plaintiff's mental impairments met or medically equaled the requirements of Listing 12.06 Anxiety Related Disorders. The undersigned agrees.

Listing 12.06 states, in pertinent part, that:

The required level of severity for these disorders are met when the requirements in both A and B are satisfied, or when the requirements in both A and C are satisfied.

A. Medically documented findings of at least one of the following:

1. Generalized persistent anxiety accompanied by three out of four of the following signs or symptoms: a. Motor tension; or b. Autonomic hyperactivity; or c. Apprehensive expectation; or d. Vigilance and scanning; or

2. A persistent irrational fear of a specific object, activity, or situation which results in a compelling desire to avoid the dreaded object, activity, or situation; or

3. Recurrent severe panic attacks manifested by a sudden unpredictable onset of intense apprehension, fear, terror and sense of impending doom occurring on the average of at least once a week; or

4. Recurrent obsessions or compulsions which are a source of marked distress; or

5. Recurrent and intrusive recollections of a traumatic experience, which are a source of marked distress;

AND

B. Resulting in at least two of the following:

1. Marked restriction of activities of daily living; or
2. Marked difficulties in maintaining social functioning; or
3. Marked difficulties in maintaining concentration, persistence, or pace; or
4. Repeated episodes of decompensation, each of extended duration.

OR

C. Resulting in complete inability to function independently outside the area of one's home.

20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 12.06.

Thus, to satisfy listing 12.06, Plaintiff must satisfy the requirements of paragraphs A and B or of paragraphs A and C. On appeal, Plaintiff argues primarily that the ALJ erred in finding that Plaintiff did not satisfy the requirements of paragraph B.

When a claimant claims disability from a mental impairment, an ALJ must rate the degree of functional limitation resulting from that impairment with respect to "four broad functional areas," including: "[a]ctivities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation." 20 C.F.R. §§404.1520a(b)(2), (c)(3). These four areas are commonly referred to as the "B criteria." *See Rabbers v. Comm'r of Soc. Sec. Admin.*, 582 F.3d 647, 653 (6th Cir. 2009)(citing 20 C.F.R. pt. 404, subpt. P, app. 1, §12.00 et seq.). In order to meet the paragraph "B criteria" a claimant must be markedly limited in two of the four categories.

In this case, the ALJ rated Plaintiff's functional impairment in each of the four "B criteria" areas before concluding that Plaintiff did not meet or equal Listing 12.06. The ALJ concluded that the paragraph B criteria was not met because he believed that Plaintiff was only mildly restricted in activities of daily living; moderately restricted in

social functioning; and moderately limited in maintaining concentration, persistence or pace with no episodes of decompensation. (Tr. 11-12).

The ALJ noted that this assessment was consistent with the record has a whole and with the assessment of the paragraph B criteria from the state agency medical consultants from May and October 2009. The ALJ also found that the state agency consultants "had the benefit of a longitudinal review of the record and are well acquainted with Social Security Regulations." (Tr. 12). As noted above the ALJ noted that the February 2011 assessment from Lifespan "indicated possible greater limitations" but it could not be given controlling weight because the assessment omitted conclusions on several key factors and "appears to be in large part based upon the claimant's own self-report." (Tr. 12). The ALJ also rejected Dr. Cresci's assessment wherein he opined that Plaintiff's impairments met the requirements for Listing 12.06, finding that Dr. Cresci's opinion was conclusory and failed to provide adequate explanation of the evidence relied on in reaching his findings. Upon careful review, the undersigned finds that the ALJ's decision relating to the paragraph B criteria is not substantially supported.

First, the ALJ relied on the state agency physicians, at least in part, because they "had the benefit of a longitudinal review of the record," a finding that is clearly erroneous. Notably, the record indicates that Dr. Meyer's assessment was completed in May 2009, the same month Plaintiff *began* treating at Butler Behavior Heath. (Tr. 332-35, 336-353). Dr. Haskins performed a paper review of Plaintiff's file and affirmed Dr. Meyer's assessment on October 14, 2009. However, the record indicates that Plaintiff

began treating at Lifespan in June 2010 and continued treatment through February 2011. (Tr. 356-399). Thus, neither Dr. Meyer nor Dr. Haskin's had the benefit of a longitudinal review of the record. Furthermore, it is clearly established law that the opinion of a non-treating "one-shot" consultative physician or of a medical advisor cannot constitute substantial evidence to overcome the properly supported opinion of a physician who has treated a claimant over a period of years. *See Lashley v. Secretary of Health and Human Services*, 708 F.2d 1048, 1054 (6th Cir. 1983).

Second, the ALJ improperly discounted the assessments from Lifespan. As noted above, generally, the opinions of treating sources are entitled to deference, if well supported. Here, the treatment notes and objective evidence[3] from Life Span support Dr. Cresici's determination that Plaintiff has marked limitations in social functioning and in maintaining concentration. Notably, a mental status examination performed at Lifespan in July 2010 indicated that Plaintiff had slow speech, anxiety and possible cognitive delays. He was diagnosed with Social Phobia and was recommended for counseling and psychiatric treatment. (Tr. 387-397). On August 5, 2010, he reported he practiced the deep breathing technique at home and was able to be in the living room with the family rather than isolating himself in the bedroom for long periods of time. (Tr. 357). On August 24, 2010 he was seen for an initial psychiatric evaluation

---

[3] Objective medical evidence consists of medical signs and laboratory findings as defined in 20 C.F.R. § 404.1528(b) and (c). See 20 C.F.R. § 404.1512(b)(1). "Signs" are defined as "anatomical, physiological, or psychological abnormalities which can be observed, apart from your statements (symptoms). Signs must be shown by medically acceptable clinical diagnostic techniques. Psychiatric signs are medically demonstrable phenomena that indicate specific psychological abnormalities, e.g., abnormalities of behavior, mood, thought, memory, orientation, development, or perception. They must also be shown by observable facts that can be medically described and evaluated." 20 C.F.R. § 404.1528(b).

with Dr. Cresci.  He reported social anxiety and that he keeps to himself.  He felt he was judged by other students to be gay, ugly and stupid.   He was diagnosed with social phobia, schizoid personality disorder and mild mental retardation with a current GAF of 40. He was started on Zoloft.  (Tr. 358-362)  On September 3, 2010 he reported panic attacks from social anxiety. (Tr. 356)  On November 9, 2010 he continued to report a hard time concentrating, focusing and paying attention during conversations and only hears about one-half of what is said.  He was started on Concerta, Zoloft and Buspar. (Tr. 381, 382).

Such findings are also consistent with Plaintiff's school records and Dr. Meyer's narrative assessment of Plaintiff.   As detailed above, Plaintiff performed poorly in special education classes and was frequently absent due to his anxiety.  In addition, Dr. Meyer noted that Plaintiff relied on his father to answer questions, appeared confused at times, and questions needed to be broken down so Plaintiff could understand them easier.  (Tr. 338).  Dr. Meyer also noted impairment in Plaintiff's memory, attention and concentration.

Last, contrary to the ALJ findings, the fact that the opinions from the therapists at Lifespan were based on Plaintiff's self-reports does not provide an adequate basis to reject such findings.  Notably, the Sixth Circuit Court of Appeals, citing *Poulin v. Bowen*, 817 F.2d 865 (D.C. Cir.1987), stated that:

> A psychiatric impairment is not as readily amenable to substantiation by objective laboratory testing as a medical impairment ... consequently; the diagnostic techniques employed in the field of psychiatry may be somewhat less tangible than those in the field of medicine.... In general, mental disorders cannot be ascertained and verified as are most physical

illnesses, for the mind cannot be probed by mechanical devices [sic] in order to obtain objective clinical manifestations of medical illness.... When mental illness is the basis of a disability claim, clinical and laboratory data may consist of the diagnosis and observations of professionals trained in the field of psychopathology. The report of a psychiatrist should not be rejected simply because of the relative imprecision of the psychiatric methodology or the absence of substantial documentation, unless there are other reasons to question the diagnostic techniques.

*Blankenship v. Bowen*, 874 F.2d 1116, 1121, (6th Cir.1989). In *Blankenship*, the Sixth Circuit concluded that no cause existed to question the diagnosis of a psychiatrist made after only one interview and where no psychological testing had been conducted and even though the doctor noted the need for a more accurate history. *Blankenship*, 874 F.2d at 1121. Thus, interviews are clearly an acceptable diagnostic technique in the area of mental impairments and Plaintiff's therapists could rely upon the subjective complaints elicited during treatment sessions with Plaintiff in formulating Plaintiff's functional restrictions. See *Warford v. Astrue*, No. 09-52, WL 3190756, at *6 (E.D .Ky. Aug. 11, 2010) (finding interviews are an acceptable diagnostic technique in the area of mental impairments).

Based on the foregoing, the undersigned finds that the ALJ improperly evaluated the evidence relating to the paragraph B criteria. Accordingly, the ALJ's determination that Plaintiff's impairments did not meet or equal Listing 12.06 cannot be sustained and must be reevaluated on remand.

*3. RFC Assessment*

Plaintiff's last assignment of error asserts generally that ALJ's RFC assessment is against the substantial weight of the evidence. In addition to the errors addressed above, Plaintiff challenges the ALJ's credibility analysis used in formulating Plaintiff's RFC.

Generally, the ALJ's findings as to credibility are entitled to deference because he or she has the opportunity to observe the claimant and assess his or her subjective complaints. *Cross v. Commissioner of Social Security*, 373 F.Supp.2d 724, 732 (N.D.Ohio,2005) (citing *Buxton v. Halter*, 246 F.3d, 762, 773 (6th Cir.2001)). The regulations set forth factors that the ALJ should consider in assessing credibility. *Id.* These include the claimant's daily activities; the location, duration, frequency, and intensity of the pain; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of medication; and treatment or measures, other than medication, taken to relieve pain. *Id.* (citing 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii)). If the ALJ rejects the claimant's complaints as incredible, he or she must clearly state his reasons for doing so. *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994). *See also* SSR 96-7p (ALJ must explain his or her credibility determinations in his or her decision such that it "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.")

As detailed above, Plaintiff testified he spends the majority of his time alone in his room and only leaves the house to go to the store or the doctor and he is always

18

accompanied by a family member due to his anxiety. (Tr. 37-39). However, in finding that Plaintiff was capable of low stress work; the ALJ determined that Plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms are not credible. Specifically, the ALJ found that that Plaintiff's daily activities were inconsistent with his allegations of disability. The ALJ also rejected Plaintiff's allegations of disabling mental impairments because "the record shows very little treatment for mental impairments." (Tr. 15). Plaintiff asserts that the ALJ's findings in this regard are not substantially supported. The undersigned agrees.

With respect to Plaintiff's daily activities, the ALJ concluded that Plaintiff's ability to leave his house to go fishing, go outside, perform yard-work and household chores, visit his mother and interact with others online and via text messaging belied his complaints of disabling anxiety. The ALJ also noted that Plaintiff could leave his house to go to medical appointments. Such activities, however, are not inconsistent with the Plaintiff's testimony or the evidence or record. Namely, Plaintiff testified that he only goes fishing with his brother in remote places where no one else is nearby. (Tr. 39, 40). Moreover, Plaintiff performed yard-work, chores, and used the computer, alone, without the presence of other individuals. Although Plaintiff testified that he was able to leave the house to attend medical appointments, he also testified that he must be escorted by a family member.

Upon close inspection, the undersigned finds that the ALJ's credibility analysis improperly mischaracterized Plaintiff's daily activities. *White v. Comm'r of Soc. Sec.,* 312 F. App'x 779, 789 (6th Cir. 2009) (finding that ALJ's mischaracterized testimony

regarding daily activities in violation of SSR 96-7p).   Here, Plaintiff's subjective complaints are consistent with this testimony, his school records and his treatment records.  The ALJ's finding to the contrary is not substantially supported.

Furthermore, Plaintiff's ability to perform such limited activities is not substantial evidence that his symptoms are not disabling.   See 20 C.F.R. § 404.1572(c) ("Generally, we do not consider activities like taking care of yourself, household tasks, hobbies, therapy, school attendance, club activities, or social programs to be substantial gainful activity."); *Rogers v. Comm'r of Soc. Sec*, 486 F.3d 234, 248–49 (6th Cir. 2007) (the minimal daily functions of driving, cleaning an apartment, caring for pets, laundry, reading, exercising and watching the news are not comparable to typical work activities); *Cohen v. Sec'y Dept. Health & Human Servs.*, 964 F.2d 524, 530 (6th Cir.1992) (the fact that disability claimant continued ballroom dancing and attended law school during period for which she claimed disability benefits did not warrant a finding that she could maintain substantial gainful employment).

Additionally, the ALJ improperly discounted the Plaintiff's testimony relating to the severity of Plaintiff's mental impairments based upon Plaintiff's sparse mental health treatment.  The Sixth Circuit has held that a failure to seek examination or treatment may say little about a claimant's truthfulness.   *See Blankenship v. Bowen*, 874 F.2d 1116, 1124 (6th Cir.1989) (failure to seek medical care "should not be a determinative factor in a credibility assessment" where claimant is operating under a mental impairment).

Accordingly, on remand, the ALJ is instructed to re-evaluate Plaintiff's credibility in accordance with agency regulations and controlling law.

### III. Conclusion and Recommendation

This matter should be remanded pursuant to Sentence Four of § 405(g) for further proceedings consistent with this Report and Recommendation. A sentence four remand under 42 U.S.C. §405(g) provides the required relief in cases where there is insufficient evidence in the record to support the Commissioner's conclusions and further fact-finding is necessary. *See Faucher v. Secretary of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994) (citations omitted). In a sentence four remand, the Court makes a final judgment on the Commissioner's decision and "may order the Secretary to consider additional evidence on remand to remedy a defect in the original proceedings, a defect which caused the Secretary's misapplication of the regulations in the first place." Faucher, 17 F.3d at 175. All essential factual issues have not been resolved in this matter, nor does the current record adequately establish Plaintiff's entitlement to benefits as of his alleged onset date. *Faucher,* 17 F.3d at 176.

For the reasons explained herein, **IT IS RECOMMENDED THAT**:

1. The decision of the Commissioner to deny Plaintiff DIB benefits be **REVERSED** and this matter be **REMANDED** under sentence four of 42 U.S.C. §405(g).

2. On remand, the ALJ be instructed to: 1) properly assess and evaluate the opinion evidence, and provide a clear explanation for the conclusions reached; 2) reevaluate whether Plaintiff's impairments meet or equal listing 12.06; and 3) properly consider Plaintiff's credibility in accordance with agency regulations.

3. As no further matters remain pending for the Court's review, this case be

**CLOSED**.

_s/Stephanie K. Bowman_
Stephanie K. Bowman
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

JEROMY FRY,                                        Case No. 1:11-cv-657

        Plaintiff,                              Dlott, C.J.
                                                   Bowman, M.J.
   v.

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

        Defendant.


**NOTICE**

Pursuant to Fed. R. Civ. P 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).